[Cite as *Lang v. Ohio Dept. of Job & Family Servs.*, 196 Ohio App.3d 80, 2011-Ohio-4327.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

LANG,

      APPELLEE,                              CASE NO.  13-10-33

      v.

DIRECTOR, OHIO DEPARTMENT
OF JOB AND FAMILY SERVICES,        O P I N I O N

      APPELLANT.    (Three Cases)

Administrative Appeals from Seneca County Common Pleas Court
Trial Court Nos. 09-CV-0613, 10CIV0161, 10CIV0162

Judgments Affirmed

Date of Decision:  August 29, 2011

Richard W. McHugh, pro hac vice, and Jason E. Dawicke, for appellee.

Eric A. Baum, for appellant.

**SHAW,** Judge**.**

**{¶ 1}** Appellant, the Director of the Ohio Department of Job and Family Services ("ODJFS"), appeals the judgments of the Seneca County Court of Common Pleas finding appellees, James A. Lang, Teddy H. Sharp, and Mark A. Laibe, entitled to receive alternative-trade-adjustment-assistance benefits.

**{¶ 2}** Appellees worked together at American Standard in Tiffin, Ohio. In 2007, appellees were notified by their employer that their positions would be terminated because the Tiffin facility was closing and their jobs were moving abroad. Lang and Laibe's last day of employment with American Standard was December 21, 2007. Sharp's last day of employment was December 22, 2007.[1]

**{¶ 3}** Seneca County Department of Job and Family Services ("SCDJFS") arranged mandatory workshops to inform affected workers, like appellees, of federal and state programs designed to alleviate the effects of their job displacements. In these informational meetings, appellees learned of trade-adjustment-assistance ("TAA") programs, which were established by the Trade Act of 1974, Section 2101 et seq., Title 19, U.S.Code, and intended to "assist workers who have become unemployed due to the effects of international trade." *Former Emps. of Indep. Steel Castings Co., Inc. v. United States Dept. of Labor* (Ct.Int.Trade 2007), 2007 WL 2068627, *1.

**{¶ 4}** Appellees chose to participate in a particular TAA program implemented through the TAA Reform Act of 2002, Pub.L. No. 107-210, 116 Stat. 933, which provides alternative-trade-adjustment-assistance ("ATAA") benefits. This program is designed to assist older displaced workers by providing "a wage subsidy for such workers who quickly obtain reemployment at a lower wage than

---

[1] This date is referred to as the "date of separation" from the employer.

what they previously earned." *Former Emps. of Indep. Steel Castings Co.,* at *1. Workers of this program are eligible to receive benefits if they meet certain criteria, including that they are at least 50 years old and become reemployed by a different employer within 26 weeks of the date of separation from their prior employer. See Section 2318, Title 19, U.S.Code. Once approved, the displaced worker may be entitled to receive up to half the difference between the wages earned through their reemployment and their previous employment.

{¶ 5} Appellees were each 49 years old at the time of their separation from American Standard in December 2007. Appellees subsequently found reemployment with a different employer, where they earned significantly less than they did at American Standard.[2] Appellees each attained age 50 after finding reemployment but before their last date of eligibility for the ATAA program on June 21, 2008.[3]

{¶ 6} Appellees were each told by a representative of SCDJFS that upon attaining age 50, they would be eligible for ATAA benefits. Accordingly, each appellee waited until after his 50th birthday to file his application. Appellees were also informed that by electing to receive ATAA benefits, they would forgo their eligibility for other types of TAA benefits available to them as a result of their

---

[2] Lang was reemployed on April 21, 2008, by the Clinton Township road crew, Sharp was reemployed on January 28, 2008, by Cooper Tire, and Laibe was reemployed on March 17, 2008, by National Carbon Electric.

[3] Lang turned 50 on May 30, 2008; Sharp on May 6, 2008; and Laibe on June 1, 2008. We note that the Sharp record indicates that his last day of eligibility for ATAA benefits was June 21, 2008, the same day as Lang and Laibe, even though he stated on his benefits application that his date of separation from American Standard was December 22, 2007.

separation from American Standard. In each case, appellees filed their applications to receive ATAA wage subsidies after turning age 50, but within the 26-week eligibility timeframe.

{¶ 7} ODJFS denied appellees' applications for ATAA benefits, stating that they "had not reached *50 years of age at the time of reemployment*" as the reason for the denials. (Emphasis added.) Appellees each filed separate requests for redeterminations with ODJFS, which were granted and resulted in ODJFS' reaffirming its prior determinations denying appellees ATAA wage-subsidy benefits. Appellees separately appealed the ODJFS redeterminations to the Unemployment Compensation Review Commission ("review commission").

{¶ 8} Lang's case was heard first. On April 3, 2009, the review commission conducted a hearing with Lang, his counsel, and a representative of ODJFS. At the hearing, the ODJFS representative explained that in denying Lang benefits, ODJFS relied upon the United States Department of Labor's Training and Employment Guidance Letter ("TEGL") No. 2-03. TEGL No. 2-03 states that an individual must meet certain criteria to be eligible for ATAA benefits, including that the individual is *"at least age 50 at the time of reemployment."* (Emphasis added.) Lang argued that nowhere in the text of Section 2318(a)(3)(B), Title 19, U.S.Code does it require the individual to be age 50 *at the time of reemployment* in order to be eligible for ATAA benefits. Rather, the language simply requires that the individual be at least 50 years of age *when he or she elects to receive ATAA benefits*. The review commission agreed with Lang's

-4-

argument, and on June 24, 2009, it reversed the determination of ODJFS and found that Lang was entitled to receive ATAA benefits.

{¶ 9} ODJFS appealed the decision. The review commission subsequently issued a notice to Lang and his attorney vacating its decision. The notice provided no reason for this action, but simply stated, "It appears that the review commission's decision must be vacated and set aside in order that a new hearing may be held."[4]

{¶ 10} At this subsequent hearing, the review commission explained that one of the purposes for the second hearing was to supplement the record with additional information not in evidence at the prior hearing. ODJFS introduced two exhibits into the record. The first was titled "Trade Adjustment Assistance Program Annual Cooperative Financial Agreement," which is an agreement between the United States Department of Labor and the Ohio governor's office agreeing to follow certain directives of the agency, including TEGLs. The second was titled "Standard Assurances and Certifications for the Trade Adjustment Assistance (TAA) Program Annual Cooperative Financial Agreement for Fiscal Year 2008 Funds," which set out rules that the state must comply with in order to receive grant money from the United States Department of Labor to fund the TAA

---

[4] The record indicates that immediately preceding the issuance of this notice, ODJFS sent various documents to the review commission, including an April 29, 2009 agreement between the United States Department of Labor and the Ohio governor's office, in which the ODJFS purportedly agreed to comply with the TEGLs issued by the Department of Labor in implementing its TAA programs. Notably, none of these documents were served on Lang or his attorney prior to the review commission's notice vacating the previous decision awarding Lang ATAA benefits.

programs. Both agreements were signed by the United States Secretary of Labor and the then director of ODJFS. The representative of ODJFS testified that after the review commission entered its decision allowing Lang to receive ATAA benefits, the United States Department of Labor requested that ODJFS file an appeal of that determination.

{¶ 11} After this second evidentiary hearing, the review commission entered its decision denying Lang ATAA benefits. In support of its decision, the review commission found the signed agreements between the director of ODJFS and the United States Secretary of Labor to be dispositive. The review commission concluded that ODJFS agreed to follow the guidelines implemented by the Department of Labor, including TEGL No. 2-03. In the opinion, the review commission explained that the "existence of the Trade Assistance Program Annual Cooperative Financial Agreement was unknown to the representative of the Ohio Department of Job and Family Services appearing at the [previous] hearing and also [to] the Hearing Officer." Accordingly, the review commission concluded that Lang was not eligible to receive ATAA benefits because he was not 50 years of age at the time of his reemployment, as required by TEGL No. 2-03. The decision also ordered Lang to immediately repay the ATAA benefits he had received since the prior favorable decision allowing him to draw ATAA benefits.

{¶ 12} Sharp's and Laibe's appeals of their ODJFS determinations occurred after the review commission rendered its decision in the Lang case. The review commission relied on its reasoning in Lang's case to affirm the determinations of

-6-

ODJFS denying ATAA benefits to Sharp and Laibe because they were not 50 years old at the time they were reemployed.

{¶ 13} All three cases were separately appealed to the Seneca County Court of Common Pleas pursuant to the administrative appeals procedure set forth in R.C. 4141.282. The Ohio Attorney General entered an appearance on behalf of ODJFS. The trial court consolidated the three cases for the purposes of oral argument. On August 10, 2010, the trial court issued its decision in the cases. The court reviewed the federal statute establishing the ATAA program and concluded the following:

> Strict adherence to the statute mandates that if by the time of filing all the requirements [for ATAA benefits] were met, then an applicant is eligible. * * * Awarding the three appellants ATAA benefits is not an arbitrary or inconsistent distribution of ATAA funds but an adherence to the very basic purpose of Congress in enacting the statute. * * * Therefore, the manifest weight of the evidence, law, and reason find that the appellants met both the statutory requirement that a worker under the age of 50 at his or her separation from employment must obtain reemployment within 26 weeks of that separation and be 50 years of age in order to receive ATAA benefits.

{¶ 14} The trial court further reasoned that under the statutory interpretation offered by the TEGL, the workers in this case would needlessly have been required to postpone job searches or even lose employment opportunities for many weeks in order to wait until they turned 50 years of age to maintain their eligibility for TAA benefits.

> Given that all three appellants would have turned 50 years old within the 26 weeks they were allotted by the statute to regain reemployment, had the appellants waited to begin reemployment until the 26th week, when they would have been 50 years of age, the appellants would have met all

-7-

the requirements and received benefits. The appellants' initiative in finding reemployment should not preclude them from receiving benefits intended for workers in their position.

{¶ 15} Accordingly, the trial court found the review commission's decision to be unreasonable and against the manifest weight of the evidence and reversed the commission's determination that appellees were not entitled to ATAA benefits.

{¶ 16} ODJFS filed this appeal, assigning the following assignment of error.

## ASSIGNMENT OF ERROR

Courts must defer to administrative agencies' reasonable interpretations of statutes. Here, 19 U.S.C. § 2318(a)(3)(B)(1) provides benefits for certain 50-year-old individuals who lose their jobs and subsequently accept lower-paying positions. The U.S. Department of Labor interprets the statute as requiring that individuals be 50 years old at the time of reemployment. The trial court erred in ignoring this interpretation and awarding benefits to appellees, who were not 50 years old at the time they began reemployment.

{¶ 17} Initially, we note that statutory construction presents a legal issue that we review de novo. *State v. Wemer* (1996), 112 Ohio App.3d 100, 103, 677 N.E.2d 1258. The first rule of statutory construction is that a statute that is unambiguous and definite on its face is to be applied as written and not construed. Id., citing *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995. Courts must give effect to the words expressly used in a statute rather than deleting words used or inserting words not used in order to interpret an

unambiguous statute. *State v. Taniguchi* (1995)*,* 74 Ohio St.3d 154, 156, 656 N.E.2d 1286.

{¶ 18} The federal statute at issue provides:

A worker in the group that the Secretary [of Labor] has certified as eligible for the alternative trade adjustment assistance program *may elect to receive benefits under the alternative trade adjustment assistance program if the worker—*

(i) is covered by a certification under Subpart A of this part;

(ii) *obtains reemployment not more than 26 weeks after the date of separation from the adversely affected employment;*

(iii) *is at least 50 years of age;*

(iv) earns not more than $50,000 a year in wages from reemployment;

(v) is employed on a full-time basis as defined by State law in the State in which the worker is employed; and

(vi) does not return to the employment from which the worker was separated.

(Emphasis added.) Section 2318 (a)(3)(B), Title 19, U.S.Code.[5]

{¶ 19} On August 6, 2003, a year after ATAA was enacted, an assistant secretary of the United States Department of Labor sent TEGL No. 2-03 to all state agencies participating in TAA programs. The purpose of TEGL No. 2-03, as stated in the letter, is to "transmit interim operating instructions for implementing the alternative-trade-adjustment-assistance (ATAA) for Older Workers Program

---

[5] This was the version of the statute in effect at the time appellees applied for ATAA benefits. We acknowledge that the statute was amended in 2009. with the latest version becoming effective on February 17, 2009; however, the eligibility requirements for ATAA remain substantively the same.

established by the Trade Adjustment Assistance Reform Act of 2002." Regarding

the eligibility criteria for workers who seek to apply for ATAA benefits, TEGL

No. 2-03 states:

> To be eligible for ATAA, an individual must meet the following conditions *at the time of reemployment*:
>
> 1. *Be at least age 50 at the time of reemployment.* The individual's age can be verified with a driver's license or other appropriate documentation.
>
> 2. Obtain reemployment by the last day of the 26th week after the worker's qualifying separation from the TAA/ATAA certified employment. This reemployment may be verified with a copy of the job offer letter or a check stub.
>
> 3. Must not be expected to earn more than $50,000 annually in gross wages (excluding overtime pay) from the reemployment. If a paycheck has not been issued at the time of application, the employer must submit a supporting statement indicating that annual wages will not exceed $50,000.
>
> 4. Be reemployed full-time as defined by the state law where the worker is employed. The verification will be conducted in the same manner as is used for determining [Unemployment Insurance] benefits.
>
> 5. Cannot return to work to the employment from which the worker was separated. Thus, the worker cannot return to the same division/facility that he/she was separated from nor can the worker do the same or similar work for the employer that he/she was separated from in another division/facility.

(Emphasis added).

{¶ 20} In comparing TEGL No. 2-03 with the federal statute, we note that

the eligibility requirements are for the most part congruent, with one exception.

TEGL No. 2-03 deviates from the federal statute requiring a worker to be at least

50 years of age *at the time he or she elects to receive ATAA benefits* and instead announces a new age requirement mandating that the worker be 50 years old *at the time of reemployment*. It is interesting to note that at the administrative level, the review commission initially agreed with this interpretation of the statutory language and granted the benefits. The commission subsequently reversed itself, not based upon any reconsideration of the statutory language or the merits of TEGL 2-03, but solely based upon the discovery of the aforementioned financial agreements purporting to link federal funding in these cases to a promise by the ODJFS to follow the TEGL guideline letters.

{¶ 21} However, on appeal, ODJFS now defends the agency's age-50-at-reemployment requirement announced in TEGL No. 2-03, by asserting that Section 2318, Title 19, U.S.Code, is "silent on the key question of *when* the individual must have turned 50." (Emphasis sic.) ODJFS argues that this "silence" renders the federal statute on an individual's eligibility for ATAA ambiguous—i.e., that the language contained in Section 2318, Title 19, U.S. Code, is subject to more than one reasonable interpretation. Thus, ODJFS now maintains that the Department of Labor resolved the ambiguity by implementing the age-50-at-reemployment requirement in TEGL No. 2-03.

{¶ 22} In addition, ODJFS further argues that Congress specifically delegated the administration of ATAA to the Department of Labor and, therefore, made it solely responsible for the "resolution of all policy disputes that Congress did not resolve itself." ODJFS contends that because the issue of when an

individual must turn 50 to qualify for ATAA benefits is ambiguous under the federal statute, the trial court was mandated by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 844, 104 S.Ct 2778, to defer to the Department of Labor's reasonable interpretation of the statute unless that interpretation is, arbitrary, capricious or manifestly contrary to the statute.

{¶ 23} While we acknowledge the longstanding principle of deference under *Chevron*, we do not believe that this principle is applicable to the federal statute at issue. We initially note that the United States Supreme Court in *Chevron* held that a court must give effect to an agency's *regulation* containing a reasonable interpretation of an ambiguous statute. Id. at 842-844. The Department of Labor's interpretation in this case, presented in an internal guidance letter, however, does not qualify for the dispositive force described in *Chevron*. See *Alaska Dept. of Environmental Conservation v. Environmental Protection Agency* (2004), 540 U.S. 461, 463, 124 S.Ct. 983; see also *Christensen v. Harris Cty.* (2000), 529 U.S. 576, 587, 120 S.Ct. 1655 ("Interpretations such as those in * * * policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference"); accord *United States v. Mead Corp.* (2001), 533 U.S. 218, 234, 121 S.Ct. 2164.

{¶ 24} Moreover, as the United States Supreme Court explained in *Chevron*, whether a court must defer to an agency's interpretation of a statute depends first on whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court,

as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. Furthermore, courts are "required to apply the plain language of a statute when it is clear and unambiguous." *Jaques v. Manton*, 125 Ohio St.3d 342, 2010-Ohio-1838, 928 N.E.2d 434, ¶ 14; see also *Kneisley v. Lattimer-Stevens Co.* (1988), 40 Ohio St.3d 354, 357, 533 N.E.2d 743 ("Absent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand").

{¶ 25} In reviewing the plain language of Section 2318(a)(3)(B), Title 19, U.S.Code, we find no ambiguity for the question of when an individual must attain age 50 to be eligible for ATAA benefits. Rather, the statute clearly states that a worker *may elect to receive benefits* under the alternative trade adjustment assistance program *if the worker is at least 50 years of age*. Therefore, it is apparent that the statute is not silent, as ODJFS contends, but demonstrates that Congress has directly spoken to when an individual must be at least 50 years old to be eligible under the ATAA provisions and it is *at the time the individual elects to receive benefits*.

{¶ 26} We further note that in construing a statute, a court's paramount concern is the legislative intent. In order to determine legislative intent, the court reviews the applicable statutory language and the purpose to be accomplished. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. Congress has recently reaffirmed its legislative intent in enacting the 2009 amendments to the provisions establishing ATAA benefits:

It is the sense of Congress that the *Secretaries of Labor*, Commerce, and Agriculture *should apply the provisions of part 2 of this subchapter (relating to adjustment assistance for workers),* part 3 of this subchapter (relating to adjustment assistance for firms), part 4 of this subchapter (relating to adjustment assistance for communities), and part 6 of this subchapter (relating to adjustment assistance for farmers), respectively, *with the utmost regard for the interests of workers*, firms, communities, and farmers *petitioning for benefits* under such parts of this subchapter.

(Emphasis added.) Section 2397a, Title 19, U.S.Code.[6]

**{¶ 27}** Congress had a choice to implement the age-50 requirement at the date of separation, the date of reemployment, or the date that the individual elects to receive ATAA benefits. Clearly, by choosing the latter, Congress gave full effect to its intention to apply the ATAA provisions with the utmost regard for the interests of the worker by selecting the *least restrictive* age requirement to determine a worker's eligibility.

**{¶ 28}** Moreover, specifically with respect to ATAA benefits, Congress delegated to the Department of Labor the authority to "prescribe such regulations as may *be necessary to carry out the provisions of this part*." (Emphasis added.) Section 2320, Title 19, U.S.Code. In light of our conclusion that the federal statute setting forth the eligibility requirements for ATAA benefits is not ambiguous, but clearly states that an individual must be at least 50 years of age at the time of electing to receive ATAA benefits, the new requirement placed on

---

[6] Notably, in enacting the 2009 amendments, Congress left unchanged the language stating that an individual must be at least 50 years of age at the time he or she elects to receive ATAA benefits, despite the fact that TEGL No. 2-03 has been in circulation for almost six years.

-14-

ATAA eligibility by TEGL No. 2-03 is not only unnecessary to carry out ATAA provisions but is also manifestly contrary to the language of the statute.

{¶ 29} Aside from being inconsistent with the federal statute establishing the eligibility requirements for receiving ATAA benefits, the decision of the review commission to follow TEGL No. 2-03 based solely on the ancillary financial agreements with the Department of Labor also subverts Congress's directive implementing the appellate review process of a state agency's determination of TAA benefits.  Congress explicitly established the procedure to be used when reviewing a benefits determination by a state agency:

> A determination by a cooperating State Agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State Law and only in that manner and to that extent.

Section 2311(e), Title 19, U.S.Code.

{¶ 30} The federal legislation further defines "state law" as meaning "the unemployment insurance law of the State."  Section 2319(10), Title 19, U.S.Code. The Ohio appellate procedure for unemployment-compensation determinations is established by R.C. 4141.282(H).  As shown by the procedural posture of the instant case, once a party has exhausted his or her appellate rights at the administrative level through review by both the director of ODJFS and the Unemployment Compensation Review Commission, a party may then appeal the agency's decision to the court of common pleas pursuant to R.C. 4141.282.  In particular, R.C. 4141.282(H) establishes the appellate procedure to be used by the

-15-

court of common pleas in reviewing the agency's unemployment compensation determinations:

> The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

{¶ 31} Upon further appeal, an appellate court applies the same standard of review as the court of common pleas. *Lemaster v. Unemp. Comp. Rev. Comm.*, 3rd Dist. No. 9-06-30, 2007-Ohio-771, ¶ 10, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207. In so reviewing, however, the review commission's role as fact-finder remains intact, and the fact that reasonable minds may reach different conclusions is not a basis for reversing the commission's decision. *Tzangas* at 697.

{¶ 32} Nevertheless, when the issue is one of statutory construction, which presents a question of law, both the common pleas court and the appellate court exercise plenary powers of de novo review. By arguing that the trial court and this court are bound to follow TEGL No. 2-03, which we have determined to be manifestly contrary to the express language of the statute it claims to interpret, ODJFS is essentially asserting that the Department of Labor, by a mere guidance letter, is permitted to unilaterally supersede the role of this state's judiciary in reviewing TAA-benefits claims as established by both federal and state law. ODJFS further seems to assert that the financial agreements between the

-16-

governor's office and the Department of Labor also permit ODJFS to contractually bypass or supersede the express provisions of Sections 2311(e), 2318(a)(3)(B), and 2397(a), Title 19, U.S.Code, as well as the statutory standards of review for both the ODJFS, the review commission, and the state-court system under R.C. 4141.282(H).  We reject these assertions.

{¶ 33} In *Chevron*, the Supreme Court noted that ultimately, the "judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  (Citations omitted.)  *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778, fn. 9.  Accordingly, after reviewing the federal statute at issue, we conclude that the review commission's reliance on TEGL No. 2-03 in denying appellees ATAA benefits was unlawful, unreasonable, and against the manifest weight of the evidence.  Appellees, who were all 50 years of age at the time that they elected to receive the benefits, met the eligibility requirements set forth by the federal statute, and they are entitled to receive ATAA wage-subsidy benefits.

{¶ 34} In sum, we concur with the original decision of the review commission and the subsequent determination of the Seneca County Court of Common Pleas.  We would further observe that even if the financial agreements were somehow deemed valid, our decision is not necessarily inconsistent with those agreements.  In other words, ODJFS may believe that in order to receive

federal funding, it is obligated to comply with the terms of these agreements. If so, then it has fully complied with those agreements by following TEGL No. 2-03 in this case. However, that does not guarantee that the decision of ODJFS to follow any particular TEGL will not be reversed on appeal to the state-court system when the TEGL that is followed by ODJFS is determined by the common pleas court or the state court of appeals to be contrary to law.

{¶ 35} While we acknowledge that the trial court arrived at its conclusion to award appellees ATAA benefits by way of different reasoning, we find no error in the trial court's ultimate decision that appellees met the eligibility requirements in Section 2318(a)(3)(B), Title 19, U.S.Code and are entitled to draw ATAA benefits.

{¶ 36} For all these reasons, ODJFS's assignment of error is overruled, and the judgments of the Seneca County Court of Common Pleas are affirmed.

Judgments affirmed.

WILLAMOWSKI, J., concurs.

ROGERS, P.J., dissents.

ROGERS, Presiding Judge, dissenting.

{¶37} Although I understand the logic of the well-reasoned opinion of the majority, I interpret the statute differently and must therefore dissent.

{¶38} The statute at issue defines who may elect to receive benefits. Section 2318(a)(3)(B), Title 19, U.S.Code. This definition contains six qualifications for recipients, numbered i thru vi. Number i is a general certification requirement; number ii is the requirement that the individual "obtain reemployment not more than 26 weeks after the date of separation from the adversely affected employment"; number iii, the term at issue here, requires that the individual be "at least 50 years of age"; number iv requires that the individual earn "not more than $50,000 a year in wages from reemployment"; number v requires that the individual be "employed on a full-time basis"; and number vi requires that the individual "not return to the employment from which the worker was separated."

{¶39} Reading the section as a whole, I find it obvious that requirements ii and iv thru vi must be determined at the time the individual obtains reemployment. The following issues must be addressed:

(ii)   have 26 weeks passed since separation?;

(iv)  is the worker to receive a pay rate of $50,000 or less per year?;

(v)   is the reemployment a full time position?; and

(vi)  the worker is prohibited from returning to the prior employment.

{¶40} Consistency in interpretation then compels me to determine requirement number iii at the time of reemployment as well.

{¶41} Therefore, I read the statute as requiring the worker to be 50 years of age at the time of reemployment, consistent with the determination of ODJFS, and TEGL No. 2-03. If my interpretation is correct, the decision of the trial court must be reversed. Furthermore, if my interpretation is not correct, then I would argue that the statute is ambiguous because it is subject to more than one rational interpretation, that TEGL No. 2-03 then applies, and the decision of the trial court must still be reversed. Accordingly, I must dissent from the opinion of the majority.